UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFERY CARNEY,

                Plaintiff,                        Case No. 2:07-cv-83

v.                                           Honorable Wendell A. Miles

ROBERT TREADEAU et al.,

                Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

## Discussion

        I.        Factual allegations

Plaintiff is in the custody of the Michigan Department of Corrections (MDOC).  He is presently incarcerated at the Marquette Branch Prison (MBP), and was previously confined at the

Baraga Maximum Correctional Facility (AMF).  He complains of events that occurred at both facilities.[1]

Plaintiff alleges that between July 3, 2004, and March 2, 2006, while housed at AMF, on two occasions Defendants Aho, Brouchard, Miller, and Bresser ignored his requests for law books or delivered the wrong books.  On July 3, 2004, Defendant Jondreau refused to notarize Plaintiff's account statement, which resulted in the Clerk of the Court returning it for notarization. On August 20, 2004, at 10:30 a.m., Plaintiff asked Defendant Jondreau to pick up Plaintiff's legal mail.  Defendant Jondreau replied that the mail had already gone out, although mail often leaves the facility as late as 2:00 p.m.  On September 3, 2004, Plaintiff submitted a notary request to Defendant Sweeney, who gave the request to Defendant Jondreau, who ignored the request.  On February 24, 2005, Plaintiff asked Defendant Aho for photocopies of pages 483 to 524 of the Federal Rules of Civil Procedure, but Defendant Aho claimed Plaintiff had inadequate funds and the request did not qualify for legal photocopies.  Plaintiff claims that Defendants' actions caused him to miss a deadline in a case that he had pending in the Sixth Circuit Court of Appeals.

Plaintiff requested a videotape on October 5, 2004, for his defense of a false misconduct charge, which he did not receive.  Hearing Officer, Defendant Burke, failed to review the videotape, although she falsely stated that she had.  Defendant Burke found Plaintiff guilty solely on the basis of the false statements of Defendants Vertamen and Treadeau.  In January 2005, at his misconduct hearing, Plaintiff asked that the charge be dismissed because the timing of the hearing violated MDOC policy.  Defendant Burke refused.  Defendant Burke also refused to review the

---

[1]This matter was initiated by eleven plaintiffs seeking to bring  the case as a class action.  The plaintiffs' motion to certify class was denied on February 2, 2008, and all plaintiffs, except Plaintiff Jeff Carney, were dismissed.  Plaintiff Carney was directed to file an amended complaint reasserting his claims, and omitting those claims and defendants that related solely to other plaintiffs.  (Docket #52.)  Plaintiff filed his amended complaint on February 26, 2008. (Docket #53.)

videotape of the incident or to submit Plaintiff's questions to Defendant Reynolds. Defendant Burke found Plaintiff guilty, concluding that Plaintiff's testimony was less credible than AMF staff members.

In April 2005, Defendant Alexander prepared a biased Parole Eligibility Report (PER) concerning Plaintiff. Defendant Alexander refused Plaintiff's request to correct the PER. On July 1, 2005, Plaintiff received a 24 month continuance on parole from Defendants Sample, Atterberry and Marschke, based upon the biased PER and without being issued a parole guideline scoresheet. On July 18, 2004, Defendant Johns served Plaintiff with a copy of the parole guideline scoresheet and a notice of intent to conduct a parole interview on August 22, 2005.

On November 30, 2004, Defendant Koskinen was preparing to use an unknown chemical spray on a prisoner housed near Plaintiff. Defendant Koskinen proceeded to use the spray despite being informed by Plaintiff that he had a respiratory problem and should be removed from the area. Plaintiff began hyperventilating and regurgitating, and experienced itchy eyes and skin. Defendant Johnson informed Plaintiff that his ailment must be listed in his file in order for Plaintiff to be removed from the area when a chemical agent is used.

On December 1, 2005, Plaintiff sent a kite to Defendant Kinsel asking for a special accommodation due to his asthma. He received no response. On December 21, 2005, Defendant LaForest used a chemical spray on Plaintiff, which caused Plaintiff to have an asthma attack. In response to Plaintiff's grievance, health care was notified to evaluate Plaintiff's asthma condition and the need for Plaintiff to be removed from the area during the use of a chemical spray. Plaintiff signed off, finding it to be an agreeable Step I resolution.

Plaintiff was classified to administrative segregation in 1999, and he remained in administrative segregation when he was transferred to AMF in June 2004. Defendants Luetzow,

Jondreau, and other unknown officers used policy directives and administrative rules to keep Plaintiff in administrative segregation, even though many of the policies and rules are otherwise never followed by Defendants.

On October 30, 2004, Defendants Reynolds and Treadeau denied Plaintiff a shower, although showers were provided to the other prisoners on the wing.

In November 2004, Plaintiff submitted a complaint against Defendant Reynolds to the Michigan State Police. Thereafter, Defendant Reynolds told Plaintiff that he was going to make his stay on the wing a "living hell." Defendant Treadeau told Plaintiff that he filed too much paperwork, and Defendant Vertanen stated several times that Plaintiff was a whiner.

On May 6, 2006, Defendant Burke brought Plaintiff the wrong shoes. They were not the shoes he should have received pursuant to a special medical accommodation. Defendant Hemmila informed Plaintiff that he received the shoes that were invoiced. The shoes he was provided caused pain and resulted in a bunion. Defendant Reynolds refused to order the proper shoes. Later, Defendant Hill refused to direct Defendants Burke, Hemmila or Reynolds to order the correct shoes for Plaintiff.

In 2006, Plaintiff was transferred to the honor wing. Defendant Burke informed Plaintiff that he would do what he could to prove that Plaintiff would not last on the honor wing. Defendant Majurin heard Defendant Burke's comments, but did not intervene.

In October 1995, Plaintiff was diagnosed with Atropic Dermatitis and Asthma. He was prescribed ointment for his dermatitis and medication for his asthma. In June 2004, Defendant Hyrkas denied Plaintiff's request for hydrocortisone ointment, stating that he had been provided a different product. Defendant Williams advised Plaintiff to use the medication he had received, and to ask for the hydrocortisone ointment when his prescription was to expire.

In February 2005, Plaintiff was transferred to MBP.  Defendant Ewers advised Plaintiff that he had no refills on his ointment, and that Plaintiff must be reevaluated to obtain prescription drugs.  Plaintiff was evaluated by Defendant Berhane in May 2005.  Defendant Berhane prescribed hydrocortisone ointment, but not enough to meet Plaintiff's needs.

Plaintiff has suffered from hypertension since 2000.  Plaintiff was prescribed a variety of medications for the problem, which were not effective.  Plaintiff was eventually placed on Maxzide, which lowered his blood pressure but caused side effects, including blurred vision, nausea and lightheadedness.  Defendant Engelsgjerd continued Plaintiff on this medication.  Defendant Kintinger placed Plaintiff on a special diet.  In October 2004, when Plaintiff's blood pressure was lowered and he was tolerating Maxzide, the diet was discontinued.  Plaintiff requested a low sodium diet, which was denied by Defendant Oatley, who claimed that Plaintiff did not need a therapeutic diet.  In November 2005, Defendant Quinn advised Plaintiff that he would order a low sodium, non-pork diet, but failed to do so.

Defendant Fronterra changed Plaintiff's asthma medication without Plaintiff's knowledge.  For five days afterwards, Plaintiff experienced nausea, dizziness, and headaches.  In addition, Defendant Fronterra ordered only one inhaler per month, which was not adequate.  As a result, Plaintiff experienced an asthma attack.  After the asthma attack, Defendant Morin failed to properly treat Plaintiff, merely ordering an additional inhaler.

II.     Failure to state a claim

 A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal

Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.  Defendant Armstrong

Defendant James Armstrong is the MDOC Director of Prison Affairs. Defendant Armstrong addressed Plaintiff's multiple grievances at Step III of the grievance process. However, a plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or vicarious liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-95 (1978). A claimed constitutional violation must be based upon active unconstitutional behavior. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Id.* at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that defendants could not be held liable for the plaintiff's termination from his commissary job when their only roles in the action involved the denial of administrative grievances or the failure to act). Plaintiff failed to allege any facts that show that Defendant Armstrong personally engaged in any unconstitutional behavior. Because Plaintiff's claims against Defendants Armstrong are premised on nothing more than respondeat superior liability, he fails to state a claim.

B.  Access to the courts

Plaintiff claims that he was denied access to the courts when he did not receive certain law books that he requested, when he was denied copies of certain portions of the Federal Rules of Civil Procedure, and when Defendants Jondreau and Sweeney twice ignored his requests to notarize a document.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  To state an access to the courts claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury to pending or contemplated litigation of non-frivolous claims that challenge the prisoner's sentence or conditions of confinement. *See Lewis*, 518 U.S. at 351; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985).  Moreover, a prisoner must prove that actions that allegedly infringed upon his access to the courts were intentional, not merely negligent.  *Wojnicz v. Davis*, 80 F. App'x 382, 384 (6th Cir. 2004).

Without a showing of an actual injury, the fact that a prisoner may have suffered some type of hindrance or inconvenience in his attempt to litigate is not enough to support a claim that he was denied access to the courts.  The Sixth Circuit has repeatedly held that the constitutional right of access to the courts does not entitle prisoners to free access to photocopying machinery. *See*, *e.g.*, *Bell-Bey, v. Toombs*, No. 93-2405, 1994 WL 105900 (6th Cir. Mar. 28, 1994) ("the law is settled that an inmate does not enjoy a federal constitutional right to unlimited free photocopying

services"); *Hawk v. Vidor*, No. 92-2349, 1993 WL 94007, at *1 (6th Cir. March 31, 1993) ("the right

to have access to the courts is not interpreted as requiring unlimited access to photocopiers"); *Al-*

*Jabbar v. Dutton*, No. 92-5004, 1992 WL 107016, at *1 ("a prisoner's right of access to the courts

does not guarantee him unlimited photocopying at the state's expense") (6th Cir. May 19, 1992);

*Bond v. Dunn*, No. 89-6181, 1989 WL 149988, at *1 (6th Cir. Dec. 12, 1989) ("The constitutional

right of access to the courts does not require that prison officials provide inmates free access to

photocopying machinery"); *Fazzini v. Gluch*, No. 88-2147, 1989 WL 54125, at *2 (6th Cir. May 23,

1989) ("The right of access to the courts does not require that prison officials provide free, unlimited

access to photocopy machines").  Plaintiff alleges that he missed a deadline in the Sixth Circuit

Court of Appeals because of the delay in receiving the requested copies, but alleges no facts

demonstrating that this caused prejudice to his appeal.

Plaintiff, likewise, has not shown a legal injury by Defendant Jondreau's initial

refusal to notarize Plaintiff's account statement.  The Clerk of the Court returned the document so

that it could be notarized.  Plaintiff does not claim that he was unable to obtain notary service at that

point, nor does he claim that the slight delay caused him any legal injury or prejudice.  *See Thomas*

*v. Rochell*, 22 F. App'x 579, 579-80 (6th Cir. 2001) (the plaintiff did not demonstrate prejudice or

legal injury because of his inability to obtain notary service or a copy of his trust fund account).  Nor

has Plaintiff alleged facts showing that on the one occasion that he was delivered the wrong law

books, Defendants' actions were more than negligent.

### C.  Due process

Plaintiff raises two due process claims.  First, Plaintiff alleges that in violation of his

due process rights, Defendant Alexander prepared a biased PER concerning Plaintiff, which

Defendants Sample, Atterberry and Marschke relied upon to deny his parole. Second, he claims that he was denied due process in relation to his misconduct hearings.

To establish a procedural due process violation, a petitioner must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir.2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, 93 F. App'x 805, 806 (6th Cir. 2004); *Martin v. Ohio Adult Parole Auth.*, 83 F. App'x 114, 155 (6th Cir. 2003); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999)

Because Plaintiff has no liberty interest in being paroled, he cannot show that the biased PER was relied upon to a constitutionally significant degree. *See Caldwell v. McNutt*, No. 04-2335, 2006 WL 45275, at *1 (6th Cir. Jan. 10, 2006) ("[E]ven if the Parole Board relied on inaccurate information to deny Caldwell parole, it did not violate any liberty interest protected by the United States Constitution."); *Echlin v. Boland*, No. 03-2309, 2004 WL 2203550, at *2 (6th Cir. Sept. 17, 2004) (prisoner could not bring a § 1983 action to challenge the information considered by the parole board because he has no liberty interest in parole); *see also Draughn v. Green*, No. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999) (in order for the Due Process Clause to be implicated, false information in a prisoner's file must be relied on to a constitutionally significant degree); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation). Therefore, Plaintiff fails to state a claim for a violation of his due process rights arising from the denial of his parole.

As to Plaintiff's second due process claim concerning misconduct hearings held in October 2004 and January 2005, the Supreme Court has held that claims for declaratory relief and monetary damages that necessarily imply the invalidity of a misconduct conviction are not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing). The *Edwards* Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been

[overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original). As the Supreme Court recently has

stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent

prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target

of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success

in that action would necessarily demonstrate the invalidity of confinement or its duration."

*Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Thus, where a prisoner's claim of unfair

procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-

time credits, his claim is not cognizable under § 1983. *Id.*; *see also Thomas v. Eby*, 481 F.3d 434,

438 (6th Cir. 2007); *Bailey v. McCoy*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999)

(collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges).[2]

### D. Retaliation

Plaintiff alleges that after filing a complaint against Defendant Reynolds with the

Michigan State Police, Defendant Reynolds informed Plaintiff that he was going to make Plaintiff's

life a "living hell," and, on one occasion, denied Plaintiff a shower. In addition, several times

Defendant Vertanen referred to Plaintiff as a whiner, and Defendant Treadeau complained to

Plaintiff that he filed too much paperwork. Plaintiff claims these actions were taken in retaliation

for his complaint against Defendant Reynolds.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates

the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order

---

[2]Plaintiff does not indicate whether either of his misconduct charges were major misconducts that caused him to lose good-time credits as a result of the conviction. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486 (1995). If the convictions were for minor misconducts, Plaintiff did not suffer an infringement of any liberty interest as a result of a minor misconduct charge and therefore, fails to state a due process claim. *See Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999) ("Staffney suffered no loss of good time credits as a result of his minor misconduct conviction and the sanctions he received do not represent a liberty interest recognized by the constitution.").

to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff satisfies the first factor as his complaint to the Michigan State Police is protected conduct. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is capable of deterring a person of ordinary firmness from exercising his or her constitutional rights. The plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 2001 WL 22400730, at *11. In the present case, the alleged retaliatory conduct, even if established, was at most *de minimis* adverse action that would not deter a person of ordinary firmness from exercising his constitutional rights. *See, e.g., Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (holding that insulting language or disrespectful comments directed at an inmate are not sufficient to state a claim for retaliation); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (finding that kicking mail under prisoner's door is *de minimis* adverse action that does not rise to the level of a constitutional violation).

E.  Eighth amendment - medical claims

Plaintiff suffers from asthma, atropic dermatitis and hypertension.  He claims that he was denied proper treatment for these ailments.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farme*r, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.*  Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  Thus, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  Thus, a complaint that a

> physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. Apr. 4, 1997). Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Plaintiff's allegations establish that he has been routinely evaluated for his physical conditions, as well as prescribed numerous medications, albeit some more effective than others. He received a special diet for as long as the doctor found it necessary. Although Plaintiff is not satisfied with the various doctors' treatment programs, his factual allegations clearly show that the medical staff was not indifferent to his medical needs.

Plaintiff also complains that he was exposed to a chemical spray by Defendant Koskinen on November 30, 2004, and by Defendant LaForest on December 21, 2005. On both occasions he suffered an adverse reaction. After the November 2004 incident, Plaintiff was informed that his condition must be listed in his file in order to be removed from the area when a chemical spray is used. Almost one year later, on December 1, 2005, Plaintiff requested to be evaluated for a special accommodation regarding chemical spray. However, he was not seen by medical personnel before the incident on December 21, 2005. In response to his grievance, the medical department was directed to evaluate Plaintiff to determine if it was necessary to remove him from any area that was to be sprayed with a chemical agent. It cannot be said that Defendants LaForest and Koskinen were deliberately indifferent to a medical condition of which they were unaware. The proper course was to list a prisoner's condition in his file, and absent that listing, Defendant Koskinen was not deliberately indifferent merely because he failed to accept Plaintiff's statement. The party reviewing Plaintiff's grievance took immediate and proper action to remedy the situation. Plaintiff's allegations fail to state an Eighth Amendment claim.

Finally, Plaintiff claims that he was prescribed special accommodation shoes, which he did not receive from Defendants Burke, Hemmila or Reynolds. Defendants explained that Plaintiff received the shoes that were invoiced. Plaintiff does not allege facts showing that the Defendants were responsible for preparing the invoice, or that they were authorized to provide special accommodation shoes without the proper invoice. Nor has Plaintiff alleged facts showing that Defendant Hill, who is not a doctor, had the authority to prescribe special accommodation shoes for Plaintiff. Plaintiff's factual allegations fail to demonstrate deliberate indifference.

F.  Equal protection

Plaintiff alleges that Defendants Luetzow, Jondreau, and other AMF officers enforced policies and administrative rules against Plaintiff, although they did not enforce these polices and rules against other prisoners.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  A claim that Plaintiff was treated one way and everyone else was treated another way, by itself, is not sufficient to state an equal protection claim.  *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992).  A plaintiff who merely comprises a class of one may file an equal protection claim premised on the allegation that he was treated differently from others who are similarly situated, and that there is no rational basis for the difference in treatment.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Under a class of one equal protection theory, a plaintiff must include in his complaint facts that demonstrate disparate treatment of similarly situated individuals.  *Id*. at 564; *Ross v. Duggan*, 402 F.3d 575, 588 (6th Cir. 2004).  Plaintiff's allegations, however, are wholly conclusory.  He merely states that he is being treated differently, but provides no specific factual allegations demonstrating that policies and rules were not enforced against other prisoners.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir.1996) (citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000).

**Disposition**

Having conducted the review now required by the Prison Litigation Reform Act, the Court concludes that Plaintiff's complaint should be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the court dismisses this case, the court discerns no good-faith basis for an appeal.  Should the plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

A judgment consistent with this Opinion will issue.


Dated: <u>October 30, 2008</u>                          /s/ Wendell A. Miles
                                             Wendell A. Miles
                                             United States District Judge